IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DANIEL TWIAN BROWN,<br><br>Petitioner,<br><br>v.<br><br>STEVEN JOHNSON, *et al.*,<br><br>Respondents. | HON. JOHN MICHAEL VAZQUEZ<br><br>Civil Action<br>No. 16-6066 (JMV)<br><br>**OPINION** |

**VAZQUEZ, District Judge:**

## I.    INTRODUCTION

Presently before the Court is the petition pursuant to 28 U.S.C. § 2254 ("the Petition") (ECF No. 1) of Daniel Twian Brown. Petitioner is currently incarcerated in New Jersey State Prison in Trenton, New Jersey. (ECF No. 1-1 at 20.) Following a forty-three count indictment (ECF No. 1-8); a trial on robbery, burglary, firearm possession, assault, and related charges (ECF No. 1-52); and re-sentencing (ECF Nos. 1-9 and 1-25), Petitioner is serving a sentence, in the aggregate, of a life term of imprisonment with a consecutive forty-one year term subject to an eighty-five percent parole ineligibility. *State v. Brown*, No. A-2374-12T3, 2014 WL 8808913, at *1 (N.J. Super. Ct. App. Div. May 13, 2015); ECF No. 1-1 at 132; ECF No. 1-25.

For the reasons stated herein, the Court denies the Petition on the merits with prejudice. No certificate of appealability shall issue.

## II.    BACKGROUND

A grand jury indicted Petitioner on forty separate criminal counts, including robbery, firearm possession, and resisting arrest regarding six armed robberies over less than a one-week period. *State v. Brown*, 2009 WL 2408568, at *1 (N.J. Super. Ct. App. Div. Aug. 7, 2009).  On

June 9, 2006, a jury convicted Petitioner of six counts of first-degree armed robbery; three counts of third-degree theft; nine counts of second-degree possession of a weapon for an unlawful purpose; six counts of third-degree unlawful possession of a rifle; three counts of third-degree possession of a handgun without a permit; one count of second-degree armed burglary; one count of third-degree aggravated assault; one count of second-degree eluding; two counts of fourth-degree resisting arrest; and two counts of second-degree possession of a weapon by a convicted felon. *Brown*, 2014 WL 8808913, at *1. Between December 28, 2004 and January 1, 2005, Petitioner and other assailants committed these crimes at various locations, including four gas stations, a convenience store, and a catering truck in a parking lot. Petitioner also stole three vehicles. Following his arrest, Petitioner confessed to all of the crimes, with the exception of the robbery of the catering truck. *Id.* On September 26, 2006, the state court granted the State's motions for a discretionary extended term and to impose consecutive sentences for some of the offenses. The court sentenced Petitioner, in the aggregate, to life imprisonment, with ninety-three years, eight months and 106 days of parole ineligibility. *Id.*

Petitioner filed a direct appeal. On August 7, 2009, the Appellate Division of the Superior Court of New Jersey ("Appellate Division") reversed the convictions related to the unlawful possession of a rifle but affirmed all other convictions. *Brown*, 2009 WL 2408568, at *22. The Appellate Division also vacated the sentence imposed on two second-degree robbery convictions because the sentences were greater than the range permitted under N.J. Stat. Ann. § 2C:43–6(a)(2); and the sentencing judge failed to make sufficient findings in support of the aggravating, mitigating and *Yarbough* factors.[1] *Brown*, 2009 WL 2408568, at *2. The New Jersey Supreme Court granted

---

[1] In *State v. Yarbough*, 498 A.2d 1239 (N.J. 1985), *cert. denied*, 475 U.S. 1014 (1986), the court set forth the factors to be considered when deciding whether to impose consecutive or concurrent sentences. The *Yarbough* factors essentially focus upon "the nature and number of offenses for

Petitioner's petition for certification. *State v. Brown*, 988 A.2d 1177 (N.J. 2010). The Court affirmed and modified the Appellate Division's judgment, and it remanded for resentencing. *State v. Brown*, 14 A.3d 26, 35 (N.J. 2011). On September 9, 2011, the trial court re-sentenced Petitioner to the same aggregate term. *Brown*, 2014 WL 8808913, at *1; ECF No. 1-25.

On March 18, 2011, Petitioner filed a PCR petition. *Id.*; ECF No. 1-24 at 5. The court denied PCR on August 30, 2012. *Brown*, 2014 WL 8808913, at *1; ECF No. 1-24 at 1-11. On May 13, 2015, the Appellate Division affirmed denial of PCR. *Brown*, 2014 WL 8808913, at *1.

Petitioner filed his habeas Petition on September 29, 2016, asserting the following seven grounds[2]: (1) unconstitutionally warrantless arrest (ECF No. 1-1 at 58-67); (2) violation of Petitioner's Fourth, Fifth, and Fourteenth Amendment rights when the trial court failed to suppress the statements he made after his warrantless arrest and the warrantless search of his girlfriend's apartment (*id.* at 67-78); (3) IAC by trial counsel (*id.* at 85-115); (4) IAC by appellate counsel (*id.* at 115-23); (5) imposition of unconstitutionally cruel and unusual punishment (*id.* at 123-33); (6) violation of Petitioner's Sixth Amendment and due process rights when the trial court refused him headphones to hear sidebars (*id.* at 133-34); and (7) cumulative errors. (*Id.* at 135.) On November 7, 2016, this Court ordered Respondents to answer the Petition (ECF No. 3), which they filed on February 20, 2017. (ECF No. 7.)

---

which the defendant is being sentenced, whether the offenses occurred at different times or places, and whether they involve numerous or separate victims." *State v. Carey*, 775 A.2d 495 (N.J. 2001) (quoting *State v. Baylass*, 553 A.2d 326 (N.J. 1989)).

[2] The Petition refers to four grounds but does not expressly set forth the basis for any of them. (ECF No. 1 at 6, 8, 9 and 11.) Rather, the Petition directs: "See Memorandum of Law." (*Id.*) This Court construes the Petition's supporting Memorandum to assert seven grounds for relief. (*See* ECF No. 1-1 at 2-5.) The Court agrees with Respondents (*see* ECF No. 7 at 10-11) that some of Petitioner's ineffective assistance of counsel ("IAC") allegations (*see* ECF No. 1-1 at 78-84) purport merely to set forth the legal standard for IAC claims.

## III.    STANDARD OF REVIEW

Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner has the burden of establishing each of his claims. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Under 28 U.S.C. § 2254, as amended by the Anti–Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts. *See Renico v. Lett*, 599 U.S. 766, 772 (2010).

28 U.S.C. § 2254(d) provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Where a state court adjudicated petitioner's federal claim on the merits, a federal court "has no authority to issue the writ of habeas corpus unless the [state] [c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 567 U.S. 37, 40 (2012) (quoting 28 U.S.C. § 2254(d) ). The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *See Harrington v. Richter*, 562 U.S. 86, 98, 100 (2011).  With regard to § 2254(d)(1), a federal court must confine its examination to evidence in the record. *See*

*Pinholster*, 563 U.S. 170, 180-81 (2011).

"[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions," as of the time of the relevant state-court decision. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000) ). A decision is "contrary to" a Supreme Court holding within § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." *Williams*, 529 U.S. at 405–06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of AEDPA apply. First, AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Miller–El v. Dretke*, 545 U.S. 231, 240 (2005). Second, AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

## IV.    ANALYSIS

### A.    Ground One: Warrantless Arrest In Violation Of The Fourth Amendment

Petitioner alleges that his warrantless arrest was "unlawful and illegal" in violation of the Fourth Amendment of the United States and New Jersey Constitutions. (ECF No. 1-1 at 58

("Unlawful Arrest Claim").) On December 30, 2004, Petitioner went to an office building on the "borderline of Hackensack and Hasbrouck" and stole a four-door car. Three men whom Petitioner knew as Kenny (Kenyatta Clarke), Junior, and Jermaine accompanied Petitioner. *Brown*, 2009 WL 2408568, at *7. Based on Clarke's statements, police arrested three other individuals who participated in the crimes. These individuals also gave incriminating statements to police, including naming Petitioner as a participant. All of the men arrested implicated Petitioner in these crimes. *Id*. at *7. On January 1, 2005, Hackensack police officers arrested Petitioner, based on the arrestees' statements. Armed with a sworn complaint, the police went to the apartment of Chastity Connor ("Connor"), whom police believed to be Petitioner's girlfriend. Immediately after the arresting officers knocked on the front door of Connor's apartment, they heard a "crash" sound -- caused by Petitioner fleeing through a back window of the apartment, onto the roof of an adjacent building. After a tense, twenty-minute standoff, Petitioner surrendered to the police. *Id*.

While in custody, and after waiving his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966)*, Petitioner gave incriminating statements concerning his involvement in the various crimes. Specifically, he admitted to stealing a Nissan and an Audi and to committing December 30, 2004 armed robberies of the Easy Shop in Garfield and the BP gas station in Hackensack. *Id*.

Arresting officer Detective Patrick Coffey testified at a March 7, 2006 motion to suppress hearing Before the Honorable John A. Conte, J.S.C. He stated that he drafted and signed five complaints against Petitioner on January 1, 2005. *Id*. at *13; ECF No. 1-27 at 9. Four complaints listed his address as "406 Prospect"; the other listed his address as "45 Linden Street." Petitioner testified that his address was 406 Prospect Street. His girlfriend and her minor daughter lived at 45 Linden Street. *Brown*, 2009 WL 2408568, at *13. According to Detective Coffey, he "wasn't a hundred percent sure" where Petitioner lived when the Detective drafted the complaints, but he

did not believe that Petitioner lived with Connor. Detective Coffey listed 45 Linden Street as Petitioner's address on one of the complaints because co-defendants had told Captain Frank Lomia, who was Detective Coffey's supervisor, that Petitioner was at Connor's apartment.

During direct appeal, Petitioner argued that his "arrest was illegal because the arrest warrants were not jurated until days after he was in fact arrested, and thus any statement he made or evidence seized must also be suppressed." *Id*. at *11. The Appellate Division determined that police did not lawfully arrest Petitioner "because the face of the warrant shows that it was issued on January 3, 2005, two days after defendant's actual arrest." *Brown*, 2009 WL 2408568, at *13. However, the court ruled that the unlawful arrest did not trigger automatic exclusion of seized evidence or suppression of his statements. *Id*.

As to the physical evidence seized during Petitioner's arrest, the Appellate Division found that Connor had invited police into her apartment; she consented to a search after Detective Coffey expressed concern about weapons in the apartment; and police saw "men's clothing … items that they seized in plain view." *Id*. at *15, *16. These circumstances rendered the evidence seized to be "sufficiently attenuated from the taint of [the arrest's] constitutional violation." *Id*. As to Petitioner's post-arrest statements, the Appellate Division ruled they had "no connection to, and are otherwise attenuated from[,] the unlawful arrest." Based on the record, the interrogating officers "scrupulously adhered to [Petitioner's] rights under *Miranda*." *Id*. at *17.

Granting Petitioner's petition for certification, the New Jersey Supreme Court affirmed and modified the Appellate Division's judgment. *Brown*, 14 A.3d 26. The Court ruled that (1) co-defendants' statements implicating Petitioner provided police with sufficient probable cause to arrest him; (2) there was no seizure of any sort in Connor's apartment; (3) by fleeing through a window onto an adjacent roof and creating a standoff there, Petitioner transformed the situation

from an intended arrest in a third party's private apartment to the public arena. There, police could arrest him without a warrant based on probable cause that he had committed armed robbery; and (4) police had authority to arrest Petitioner without a warrant for resisting arrest. *Brown*, 14 A.3d at 32-35 ("Brown's constitutional rights were not violated by his lawful arrest").

In *Stone v. Powell*, 428 U.S. 465 (1976), the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. at 495-96. As the Third Circuit explained in *Hubbard v. Jeffes*, 653 F.2d 99 (3d Cir. 1981), *Stone* stands for the proposition that "when a state prisoner raises a Fourth Amendment violation in a habeas petition, a federal court may not consider the merits of the claim if the state tribunal had afforded the petitioner 'an opportunity for a full and fair litigation' of his claim." *Id*. at 102-03 (citing *Stone*, 428 U.S. at 494); *see also Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002) ("An erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar") (citations omitted); *Reininger v. Attorney Gen. of New Jersey*, No. 14-5486, 2018 WL 3617962, at *9 (D.N.J. July 30, 2018). Within the Third Circuit, a petitioner can avoid the *Stone* bar only by demonstrating that the state system contains a structural defect that prevented full and fair litigation of the Fourth Amendment claim." *Marshall*, 307 F.3d at 82.

Here, Petitioner availed himself of that opportunity for a full and fair litigation of his Unlawful Arrest Claim. He moved to suppress the "physical evidence obtained from the warrant[less] search of Ms. Connor's apartment." (ECF No. 1-29 at 7-8.) The trial court held two days of evidentiary hearings on the matter, during which both Petitioner and police testified. (ECF Nos. 1-27 and 1-28.) The trial court denied the suppression motion. (ECF No. 1-29 at 9.)

Petitioner again presented his Unlawful Arrest Claim on direct appeal. *Brown*, 2009 WL 2408568, at *11. The New Jersey Supreme Court rejected it. *Brown*, 14 A.3d at 32-35 (determining that Petitioner's warrantless arrest was lawful and supported by sufficient probable cause).

The Court concludes that the New Jersey courts provided Petitioner with an adequate forum to present his Unlawful Arrest Claim. He had a full and fair opportunity to litigate his Unlawful Arrest Claim in the state courts. He has failed to demonstrate any structural defect in the state courts' review of that claim. In accordance with *Stone* and its progeny, this Court may not consider the Unlawful Arrest Claim. *See Gilmore v. Marks*, 799 F.2d 51, 57 (3d Cir. 1986); *Hubbard*, 653 F.2d at 103. The Court will deny Ground One as barred by *Stone*.

Even if *Stone* did not apply, Ground One lacks merit. The Constitution prohibits the government from conducting "unreasonable searches" of "persons, houses, papers, and effects," U.S. Const. amend. IV. "The general rule in a criminal proceeding is that statements and other evidence obtained as a result of an unlawful, warrantless arrest are suppressible if the link between the evidence and the unlawful conduct is not too attenuated." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1040-41 (1984) (citing *Wong Sun v. United States*, 371 U.S. 471 (1963)). Whether a search is "unreasonable" is usually determined by the warrant requirement. *City of Los Angeles v. Patel*, 135 S.Ct. 2443, 2452 (2015) (quoting *Arizona v. Gant*, 556 U.S. 332, 338 (2009)). A warrantless arrest by a law enforcement officer "is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). *See also Brown*, 14 A.3d at 32-33 ("To search for the subject of an arrest warrant in the home of a third party, the police must obtain a search warrant -- absent exigent circumstances or consent") (internal citations omitted).

Under these clearly established federal law principles, it was not contrary to or an

unreasonable application of U.S. Supreme Court precedent for the New Jersey Supreme Court to find Petitioner's arrest lawful. The New Jersey Supreme Court explained that police had probable cause to arrest Brown for his behavior in resisting arrest: (1) Brown's flight "transformed the situation from an arrest in a third party's private apartment … to the public arena, where the police could arrest him without a warrant based on probable cause that he had committed armed robbery." *Brown*, 14 A.3d at 34; and (2) Brown's standoff in police presence, "posing a risk to the officers and the public[,]" provided "an alternative basis to arrest him … without a warrant for resisting" *Id. See Kentucky v. King*, 563 U.S. 452, 459-60 (2011) (citations omitted).

For all of the foregoing reasons, Ground One of the Petition is denied in its entirety.

**B.    Ground Two: Unconstitutional Failure To Suppress Petitioner's Post-Arrest Statements**

Petitioner argues that the trial court should have suppressed his post-arrest custodial statements because police had no warrant to arrest him or to search Connor's apartment. (ECF No. 1-1 at 67-78.) He claims violation of his Fourth, Fifth, and Fourteenth Amendment rights. (*Id*.) Following pre-trial evidentiary hearings on Petitioner's suppression motion, Judge Conte rejected the motion as to Petitioner's post-arrest statements. (ECF No. 1-29 at 9.) The trial judge found the statements admissible because sufficient probable cause existed to arrest Petitioner: co-defendants' statements implicated him, and Petitioner attempted to flee Connor's apartment. (*Id*. at 11.) The trial court also determined that, given the "facts and the totality of circumstances," Petitioner knowingly and voluntarily waived his *Miranda* rights." (*Id*. at 12.)

To the extent Ground Two asserts that Petitioner's inculpatory statements should have been suppressed as fruits of his purportedly unlawful arrest (Petitioner's "Poisonous Tree

Contention"),[3] such assertion is a quintessentially Fourth Amendment argument. *Stone* again bars such claim from habeas review. *See Jones v. Superintendent of Rahway State Prison*, 725 F.2d 40, 42 (3d Cir. 1984) (contention that defendant's confession and all other evidence admitted at his trial should have been suppressed as fruit of illegal arrest was not proper subject for consideration by federal habeas corpus court under *Stone*). *See also Jones v. Johnson*, 171 F.3d 270 (5th Cir. 1999) (on federal habeas review, federal court could not reexamine petitioner's Fourth Amendment claim alleging that post-arrest statements should have been suppressed as "poisonous fruit" of his illegal arrest, since state provided opportunity for full and fair litigation of petitioner's Fourth Amendment claim prior to trial and thus was barred by *Stone*).

The New Jersey courts provided Petitioner with an adequate forum to present Ground Two's Poisonous Tree Contention. He argued this point in his motion to suppress. Judge Conte considered it at the evidentiary hearing and rejected it. (ECF No. 1-29 at 9-11.) The New Jersey Supreme Court determined that Petitioner's arrest was lawful and was supported by sufficient probable cause. *Brown*, 14 A.3d at 32-35. There was no Fourth Amendment violation in the first instance to taint his post-arrest statements. Petitioner has not demonstrated any structural defect in the state courts' review of his Poisonous Tree Contention. *See Marshall*, 307 F.3d at 82. Pursuant to *Stone*, this Court may not consider that Fourth Amendment argument in Ground Two. *See Gilmore*, 799 F.2d at 57; *Hubbard*, 653 F.2d at 103

To the extent Ground Two alleges violation of Petitioner's Fifth and Fourteenth Amendment due process rights as established in *Miranda v. Arizona*, 384 U.S. 436 (1966) (Petitioner's "*Miranda* Contention"), such assertion is without merit. Pursuant to the Fifth

---

[3] Evidence obtained as a result of a Fourth Amendment violation ordinarily must be suppressed as "fruit of the poisonous tree." *Wong Sun v. United States,* 371 U.S. 471, 487–88 (1963).

Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, "[n]o person ... shall be compelled in any criminal case to be a witness against himself [.]" U.S. Const. amend. V; *Malloy v. Hogan*, 378 U.S. 1, 8 (1964). In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court of the United States held that

> when an individual is taken into custody or otherwise deprived of his freedom by the authorities ... and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege ... [He] must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires ... After such warnings have been given, [he] may knowingly and intelligently waive these rights and agree to answer questions or make a statement.

384 U.S. at 478–79 (footnote omitted).

When police question a suspect in custody without administering the required warnings, *Miranda* dictates that the answers received be presumed compelled and that they be excluded from evidence in the State's case in chief. *See Oregon v. Elstad*, 470 U.S. 298, 317 (1985). A confession taken during a custodial interrogation without the provision of *Miranda* warnings violates the privilege against self-incrimination. *See Thompson v. Keohane*, 516 U.S. 99 (1995). After such warnings and opportunity, "the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement." *Miranda*, 384 U.S. at 479. A waiver may be made orally or may be implied from a suspect's conduct. *See North Carolina v. Butler,* 441 U.S. 369, 373 (1979); *United States v. Cruz,* 910 F.2d 1072, 1080 (3d Cir. 1990), *cert. denied,* 498 U.S. 1039 (1991). The test for waiver is two-pronged: (1) the relinquishment of the right must have been voluntary, "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception"; and (2) the waiver "must have been made with a full

awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine,* 475 U.S. 412, 421 (1986) (internal quotations marks and citations omitted). *See also Dickerson v. United States*, 530 U.S. 428, 434 (2000) (internal citations omitted); *Reinert v. Larkins*, 379 F.3d 76, 88 (3d Cir. 2004) (internal citations omitted).

At the suppression motion hearing, Judge Conte correctly acknowledged the court's obligation to review the "totality of circumstances" surrounding Petitioner's post-arrest statements. (ECF No. 1-28 at 72). The court carefully scrutinized in great detail evidence of the circumstances surrounding Petitioner's post-arrest statements and whether he had waived his *Miranda* rights -- including "the events that occurred and the background, experience, and conduct of the defendant." *See Reinert*, 379 F.3d at 88. At great length, the trial court heard testimony from four police officers who were present at during Petitioner's custodial statements. A brief summary follows.

On the evening of his arrest, Petitioner spoke with Captain Frank Lomia of the Hackensack Police Department. He said Petitioner did not ask for a lawyer and did not refuse to speak with police. (ECF No. 1-28 at 68.) Captain Lomia testified that "this [wa]s the second time [Petitioner] was read his *Miranda* rights. [T]he *Miranda* form … was read to [Petitioner] … and [Petitioner] … said yes to each of the questions and … then [Petitioner] signed the form." (*Id.*) Judge Conte noted that the *Miranda* rights form advised Petitioner of his constitutional rights "in big black bold letters." (ECF No. 1-28 at 68.) Petitioner signed not only the *Miranda* form but also a statement, of which Judge Conte noted:

> [T]he *Miranda* rights form [has] a waiver at the bottom … Of course with defendant signing this[,] it flies in the face of his testimony today.

> [Exhibit] S-4 was a voluntary statement given by the defendant on the computer … [He] initialed each page and he signed the last page.

(ECF No. 1-28 at 68 ("He never asked for a lawyer and he was never threatened or coerced").) *See also* ECF No. 7-9 at 78-84 (Petitioner's statement given to Hackensack Police Department).)

Later that same evening, Detective Peter Schwartz of the Englewood Police Department interrogated Petitioner. *Brown*, 2009 WL 2408568, at *8. Police again advised Petitioner of his *Miranda* rights. He again waived those rights in writing on the *Miranda* form. Petitioner then "indicated that he understood and wished to speak." (*Id*.) Detective Schwartz testified that Petitioner appeared "very calm" during the interrogation and his "demeanor was very cooperative." *Id*. Petitioner admitted that he stole the Ford Escort and committed the December 29, 2004 armed robberies of the River Edge BP gas station and the Englewood Mobil gas station. At the conclusion of the interrogation, Detective Schwartz asked Petitioner if he wanted to add to his statement. *Id*. at *9. Petitioner replied: "Yes. I am sorry and I wasn't trying to hurt nobody. I was trying to feed my family and I lost my job and I was going through a rough time." *Id*. After speaking to Detective Schwartz, Petitioner gave a statement confessing to stealing the Nissan and Audi and to robbing the Easy Shop in Garfield. *Id*. at *10. As to this formal statement, Detective Schwartz testified that Petitioner "gave answers to questions and he was given the opportunity to make any changes on the form … He never invoked *Miranda* and he was never threatened or coerced." (ECF No. 1-28 at 69.)

Petitioner also waived *Miranda* and made a post-arrest admission to Detective Edward Garnto of the Garfield Police Department. Detective Garnto testified at the suppression hearing that he "advised defendant of his *Miranda* rights before speaking to him … Defendant signed the [*Miranda*] waiver. He admitted his participation in the robbery … He was offered pizza." (*Id*.)

Finally, Petitioner waived *Miranda* and gave a post-arrest statement to Detective Jeffrey Telep of the Lodi Police Department. Detective Telep testified as the suppression hearing that he

advised Petitioner of his *Miranda* rights and that Petitioner signed the *Miranda* rights form. Petitioner "ate pizza and soda prior to this statement. He was very cooperative." (*Id.* at 69-70.) Petitioner signed a formal statement. (*Id.*) *See also Brown*, 2009 WL 2408568, at *11 ("According to Detective Telep, Petitioner was 'very calm and cooperative,' and he did not seem or say that he was too tired or hungry to give a statement").

In sharp contrast to this substantively consistent law enforcement testimony from four different police departments, Petitioner (1) flatly denied having cognitive capacity the day of his arrest, claiming that (a) he was feeling "woozy" after consuming a whole bottle of cognac and (b) he had jumped out the apartment window because he "feared for Miss Connor and the baby"; (2) claimed unawareness of his *Miranda* rights when he gave his statements; (3) testified that he had repeatedly demanded counsel after his arrest; (4) suggested the involuntariness of his signed statements; (5) denied receiving any written or verbal *Miranda* warnings; (6) alleged that police never asked him questions before preparing his formal statements; (7) claimed that police presented him with a completed statement form for his signature, which he signed only "because of fear that police would do something to [my] family"; and (7) claimed that police never offered or provided him with food. (ECF No. 1-28 at 70-71.)

After receiving all the evidence, the state court noted the far-fetched nature of Petitioner's version of the underlying facts. Judge Conte was incredulous at Petitioner's contention that, despite his five prior convictions, he had never before heard of *Miranda*. (ECF No. 1-28 at 72.) The Judge noted the irresolvable inconsistencies among Petitioner's post-arrest statements under oath that he was involved in the robbery; his testimony that the words on his *Miranda* forms were not his; his testimony that he never read his formal signed statements; and the evidence that police told Petitioner to read every page of his statement and "if there's any changes we'll review them with

you." (*Id.*)

Judge Conte commented on the implausibility of Petitioner's version:

> Defendant's testimony today is totally incredulous. How could anyone believe what he's saying today? In order to believe defendant then it would have to find the other four parties in this case lied. They all lied deliberately to inculpate defendant. What would they have to gain?
>
> So the Court would have to find four parties lied. The Court would have to find defendant committed perjury when he gave these statements and he lied. The Court would have to find that when the detectives questioned him and said what defendant said, they lied. And what they wrote down was a lie and what defendant said in his statements was a lie. Everybody lied before today. Everybody is a liar and they all should be -- if they swore under oath, prosecuted for perjury for being liars.

(ECF No. 1-28 at 72-73.)

Based on Petitioner's lack of credibility and the persuasive facts of record, Judge Conte

refused to credit Petitioner's version of events:

> He swore under oath he was involved. Now today he says none of it is true. That is the most incredulous story. Defendant has zero credibility as a result of his testimony today. He committed perjury today. His story is so far from reality, how could anybody in the world sit and listen to these lies today? It is absolutely mind-boggling that defendant would sit in court after he gave all of these sworn statements to all these parties [and] say that he didn't do it[,] when all the other parties involved in the arrest said he was involved.
>
> And for him to say, a man with over ten arrests and five convictions, that he doesn't know what *Miranda* is, oh please, how could anybody sit in the courtroom and say that in America with that background?
>
> I don't know if somebody is so naïve or they're trying to kid the Court, fool with the Court or think everybody else is so dumb that they would fall for such a story that has no truth to it.

(*Id.* at 71-74.)

In light of that record, Judge Conte made this factual finding: "[T]he bottom line is

absolutely he was given *Miranda* warnings. There is no question … on that." (*Id*. at 74.) Judge Conte indicated that was "extremely satisfied that defendant was given *Miranda* warnings several times orally and in writing and that he signed that he was given *Miranda* warnings." (*Id*. at 73, 74.) The trial court denied Petitioner's motion to suppress. (*Id*. at 74.)

On direct appeal, the Appellate Division rejected Petitioner's claim that the trial court should have suppressed his post-arrest statements as fruit of the poisonous tree and as independently tainted by multiple violations of Petitioner's *Miranda* rights. *Brown*, 2009 WL 2408568, at *16. Relying on both federal law and New Jersey cases applying it, the Appellate Division was satisfied that police scrupulously honored Petitioner's *Miranda* rights -- such that his post-seizure statements were sufficiently attenuated from his arrest. *Id*. at *17 (citing *Wong Sun v. United States*, 371 U.S. 471, 486 (1963); *Schneckloth v. Bustamonte,* 412 U.S. 218, 226 (1973); *Miller v. Fenton,* 796 F.2d 598, 603 (3d Cir.), *cert. denied,* 479 U.S. 989 (1986); *State v. Galloway*, 628 A.2d 735, 747 (N.J. 1993); *State v. Worlock*, 569 A.2d 1314, 1327 (N.J. 1990); *State v. Miller*, 388 A.2d 218, 223 (N.J. 1978).) The New Jersey Supreme Court concluded that there was "substantial, credible evidence in the record to support the [trial] court's finding that Brown voluntarily waived his rights" and that "[t]he statements he made while in police custody were therefore admissible at trial." *Brown*, 14 A.3d at 35.

This Court must presume the state courts' factual findings that Petitioner voluntarily waived his *Miranda* rights and that he voluntarily chose to give statements to police. *See* 28 U.S.C. § 2254(e)(1). Petitioner has not rebutted these findings by clear and convincing evidence or shown that they were unreasonable in light of the evidence in the record. *See* 28 U.S.C. § 2254(d)(2); *Dickerson*, 474 U.S. at 117 ("questions, such as the length and circumstances of the interrogation, the defendant's prior experience with the legal process, and familiarity with the *Miranda* warnings,

often require the resolution of conflicting testimony of police and defendant. The law is therefore clear that state-court findings on such matters are conclusive on the habeas court if fairly supported in the record"). The state courts' factual findings are also well supported by the evidence of record. Four police officers testified that they advised Petitioner of his *Miranda* rights multiple times, that he was cooperative and calm during interrogation, and that he repeatedly waived his *Miranda* rights. Petitioner claimed otherwise, but Judge Conte found him not credible. Petitioner has presented nothing to this Court to overcome the presumption that the state courts' factual findings were correct.

In addition, after careful review of the very detailed and well-documented record, the trial court's suppression motion ruling (*see* ECF No. 1-28 at 65-74), and the New Jersey Supreme Court's determination (*see Brown*, 14 A.3d at 35), this Court cannot conclude that the state court decisions were objectively unreasonable. Judge Conte considered the factors bearing on *Miranda* waiver. He made extremely detailed factual findings to support his decision that Petitioner waived his *Miranda* rights. The state court reasonably found that Petitioner gave his statements freely and with an understanding of his rights. "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010).

With no evidence that Petitioner unambiguously invoked his right to remain silent, the Appellate Division's decision on the matter, too, is consistent with *Miranda* and its progeny. *See Berghuis*, 560 U.S. at 381-82; *see also Davis v. United States*, 512 U.S. 452, 461-62 (1994) ("If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him"). Both state courts reasonably found no such evidence of unambiguous *Miranda* invocation in this case. Instead, the record reflects that Petitioner received

the required *Miranda* warnings on several occasions -- from Detectives Coffey, Lomia, Schwartz, Garnto, and Telep. (ECF No. 1-28 at 68-70.) He signed four *Miranda* rights forms. (*Id.*) He "never asked for a lawyer." (*Id.* at 68.) *See also Colorado v. Connelly*, 479 U.S. 157, 164 (1986) (coercive police activity is a necessary predicate to the finding that a confession is not "voluntary" within the meaning of due process).

The state courts correctly applied the governing federal law and reasonably determined the facts in reaching their decisions that Petitioner waived *Miranda* and gave his custodial statements voluntarily and knowingly. Petitioner has failed to demonstrate that the state court opinions, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified. *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 891 (3d Cir. 1999). The record reflects that Petitioner received the required *Miranda* warnings several times, initialed the statements of his rights, signed the form, and repeatedly waived his *Miranda* rights. It was not objectively unreasonable for the New Jersey courts to find Petitioner's post-arrest statements admissible.

Therefore, to the extent Ground Two alleges violation of Petitioner's Fifth and Fourteenth Amendment due process rights, Petitioner's claim lacks merit and is denied.

## C.     Ground Three: IAC By Trial Counsel

Petitioner argues that trial counsel rendered IAC by (1) "opening the door" during the cross-examination of Lieutenant Novak to admission of co-defendants' police statements inculpating Petitioner (ECF No. 1-1 at 85-90 ("IAC Examination Claim")); (2) not fully investigating the case (*id*. at 91-94 ("IAC Investigation Claim")); (3) performing deficiently in five respects on the suppression motion (*id*. at 94-110 ("IAC Suppression Motion Claim")); and (4) ineffectively handling plea negotiations ("IAC Plea Claim") (collectively, the "IAC Claims"). (*Id.* at 111-115.)

Petitioner raised the IAC Claims in his PCR petition. (ECF No. 7-11 at 55.) After correctly setting forth the governing standard for IAC claims under *Strickland v. Washington*, 466 U.S. 668 (1984) and *State v. Fritz*, 519 A.2d 336 (N.J. 1987), the PCR judge rejected Petitioner's arguments. Judge Roma ruled that (1) counsel provided effective assistance throughout plea negotiations (*id.* at 57-58); (2) counsel provided effective assistance in his examination of Lieutenant Novak (*id.* at 58-60); (3) Petitioner had not demonstrated prejudice as to counsel's case investigation (*id.* at 60-62); and (4) Petitioner failed to demonstrate prejudice as to counsel's performance on the suppression motion. (*Id.* at 62-63.)  Petitioner raised the IAC Claims on appeal of PCR denial. *Brown*, 2014 WL 8808913, at *2. The Appellate Division affirmed the PCR court's rulings on the IAC Claims, ruling that Petitioner failed to meet both *Strickland* prongs with respect to trial counsel. *Id.* at *5.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth the standard governing claims of ineffective assistance of counsel. First, the defendant must show that counsel's performance was deficient.  This requirement involves demonstrating that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687.  Second, the defendant must show that he was prejudiced by the deficient performance. *Id.* This requires showing that counsel's errors deprived the defendant of a fair trial. *Id.* "With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d. Cir. 2010) (quoting *Strickland*, 466 U.S. at 697)).  Counsel's performance is deficient if his representation falls "below an objective standard of reasonableness" or outside of the "wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  In examining the question

of deficiency, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. In addition, judges must consider the facts of the case at the time of counsel's conduct and must make every effort to escape what the *Strickland* Court referred to as the "distorting effects of hindsight." *Id.* The petitioner bears the burden of showing that counsel's challenged action was not sound strategy. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Furthermore, a defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694.

When assessing an ineffective assistance of counsel claim in the federal habeas context, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id.* Federal habeas review of ineffective assistance of counsel claims is thus "doubly deferential." *Id.* (quoting *Cullen*, 131 S.Ct. at 1403). Federal habeas courts must "take a highly deferential look at counsel's performance" under *Strickland*, "through the deferential lens of § 2254(d)." *Id.* (internal quotation marks and citations omitted).

As to the IAC Examination Claim, Petitioner alleges that trial counsel conducted an examination of witness Lieutenant Frank Novak in a manner that opened the door to admission of co-defendants' statements inculpating Petitioner. (ECF No. 1-1 at 85.) Specifically, Petitioner argues that "[e]ssentially, the jury was told that 'another person,' who was not subject to cross-examination, told the police that [Petitioner] committed the robberies." (*Id.*) At the time Lieutenant Novak testified, the jury was already aware Petitioner had confessed to committing the

armed robberies at the convenience store in Garfield and the four gas stations in Lodi, River Edge, Englewood, and Hackensack, and to stealing the three cars. However, Petitioner had not confessed to the armed robbery of the catering truck in Teterboro. *Brown*, 2014 WL 8808913, at *3.

In an attempt to counter the impact of Petitioner's confessions, defense counsel tried to disparage the police investigation and challenge the basis for the criminal complaint issued against Petitioner. On direct examination, Lieutenant Novak conceded that the victim did not identify Petitioner as a perpetrator and that Petitioner did not confess to the crime. *Id*. Through Novak's direct examination, defense counsel established that (1) Petitioner never gave a statement or confession regarding the Teterboro incident; (2) Mr. Toronto, the lunch truck victim, never identified Petitioner as a perpetrator; (3) the December 31, 2004 arrest date listed in the complaint was not the date of Petitioner's arrest; (4) Novak knew on January 2, 2005 that Petitioner was in custody but did not attempt to speak with him until January 10, 2005; and (5) Petitioner did not admit that he said "Give me your money" during the Teterboro incident, as the complaint charged. (ECF No. 1-46 at 63; ECF No. 1-47 at 1-12.)

At the conclusion of Novak's direct examination, the prosecutor argued that counsel had opened the door for the State to ask Novak why he believed Petitioner had robbed the catering truck, and to elicit testimony that co-defendant Winston Durant ("Durant") had identified Petitioner to police as the person with the gun during the Teterboro robbery. The court agreed with the State. The judge ruled the prosecution could elicit testimony aimed at correcting the impression left by Novak's direct examination that police had no information to support the complaint Novak signed. *Brown*, 2014 WL 8808913, at *3; ECF No. 1-47 at 12-16. The State then introduced testimony on Novak's cross-examination that Durant gave a statement to the Lieutenant, telling him what happened in the Teterboro truck case. (ECF No. 1-47 at 21.) Based on Durant's

statement, police charged Petitioner with the Teterboro crime. (*Id.*) Novak testified that, after interviewing the two other Teterboro perpetrators, he charged Petitioner with robbing the lunch truck. *Brown*, 2014 WL 8808913, at *3.

Following Novak's testimony, Petitioner moved for a mistrial based on the State's cross-examination, asserting that it violated *Bruton v. United States*, 391 U.S. 123 (1968) and petitioner's Sixth Amendment Confrontation rights. (ECF No. 1-47 at 33-34.) The court denied the application. The trial judge reasoned that defense counsel's direct examination of Lieutenant Novak was "couched [] in terms of you had no information . . . and left the jury with the distinct impression that [Lt. Novak] had no information whatsoever [to] . . . draft[] these complaints. You can't have it both ways . . . you can't ask the questions and then expect not to have some type of examination within those areas." (*Id.* at 32-33.)

During the evidentiary hearing before the PCR court, trial counsel said that his defense strategy had to address Mr. Brown's confession. (ECF No. 1-55 at 18.) Counsel said that "one of the ways [to do that] was to show the manner in which the police handled the case" and to show the police made mistakes. (*Id.*) Counsel denied that he had opened the door to testimony about co-defendants' statements. (ECF No. 1-55 at 17, 20.) In ruling on the PCR petition, Judge Roma concluded that counsel's action was a "strategic decision." (ECF No. 7-11 at 59 (relying on *State v. Buonadonna*, 583 A.2d 747, 757 (N.J. 1991) to support the PCR court's conclusion under *Strickland/Fritz*).)

Affirming rejection of the IAC Examination Claim, the Appellate Division agreed with the PCR court that trial counsel provided effective assistance on Novak's direct examination. Given jurors' awareness that Petitioner had confessed to the other crimes, defense counsel "had no alternative but to challenge the thoroughness of the police's investigation and attempt to discredit

any evidence produced by the police, which included [Petitioner]'s confessions." *Brown*, 2014 WL 8808913, at *4. The Appellate Division found as follows:

> Clearly, counsel's direct examination [of Lieutenant Novak] was part of a strategy designed to minimize the damaging impact of defendant's confessions. If the defense attorney had not made this effort than defendant had no chance of being acquitted of the crimes to which he had confessed. The risk counsel took was reasonable, especially in light of the fact that defendant's sentence on the robbery of the catering truck is running concurrently to other terms. The strategy the defense attorney employed was hardly one that "'thwarted the fundamental guarantee of [a] fair trial.'"

*Brown*, 2014 WL 8808913, at *4 (citing *State v. Castagna*, 901 A.2d 363, 375 (N.J. 2006)).

Given the deferential standard applied to the state courts' *Strickland* determination, the Court concludes that the Appellate Division's decision on the IAC Examination Claim was not contrary to or an unreasonable application of *Strickland* and its progeny. The Appellate Division was not objectively unreasonable in concluding that "counsel's direct examination was part of a strategy designed to minimize the damaging impact of [Petitioner]'s confessions." *Brown*, 2009 WL 2408568, at *4.

Petitioner acknowledges that "the entire point of questioning Novak was to highlight … the [Teterboro] complaint['s] errors," but he suggests that the actual questions posed by counsel in furtherance of that objective were defective. (ECF No. 1-1 at 88 (arguing that counsel's questions "raised the issue of what, if any, information the complaint was based upon").) Petitioner, however, fails to give a reasonable analysis as to how the objective could have otherwise been met.

In addition, to the extent Petitioner intends for Ground Three to implicate the Sixth Amendment's Confrontation Clause, his IAC Examination Claim still fails. In *Bruton v. United States,* 391 U.S. 123 (1968), the United States Supreme Court held that a defendant's right under

the Sixth Amendment's Confrontation Clause was violated where a non-testifying co-defendant's hearsay confession inculpating the defendant as a participant in the crime was admitted into evidence. Under *Bruton,* courts employ a two-step process to determine if admission of a co-defendant's hearsay statement violates the Confrontation Clause: (1) whether the contested statement by an out-of-court declarant qualifies as "testimonial."[4] If not, admissibility is governed solely by the rules of evidence; and (2) whether the witness is unavailable and there was a prior opportunity for cross-examination. *United States v. Berrios,* 676 F.3d 118, 127 (3d Cir. 2012); *United States v. Shavers,* 693 F.3d 363, 395 (3d Cir. 2012) ("a witness's statement implicates the Confrontation Clause only if it is testimonial") (citing *Berrios,* 676 F.3d at 126).

Novak testified as follows:

> Prosecutor: And you in fact interviewed Winston Durant, right?
>
> Novak: Yes.
>
> Prosecutor: He told you everything that happened in connection with your case, right?
>
> Novak: Yes.
>
> Prosecutor: Based upon what Winston Durant told you, in part, [is] why you charged the defendant [Brown] with these crimes?
>
> Novak: Based on Winston Durant and I believe Tony Parham also.

(ECF No. 1-47 at 20-21.) While Novak never indicated what Durant actually said, the plain implication of the testimony is that Durant inculpated Petitioner. Nevertheless, the Court agrees with the state court's ruling that once the credibility of Novak's investigation was raised by Petitioner, the door was opened to other aspects of the officer's investigation.

---

[4] "Testimonial" statements are those made by "witnesses" who "bear testimony," such as by making a "formal statement to government officers," and are not statements made casually to acquaintances. *Crawford v. Washington,* 541 U.S. 36, 51-52 (2004).

For these reasons, Petitioner has not met his burden as to *Strickland*'s defective performance prong for the IAC Examination Claim. It was objectively reasonable for the Appellate Division to affirm the PCR court's decision that counsel made a tactical decision with Novak's examination. The state courts' reasoning does not amount to an unreasonable application of the *Strickland* standard. The Court will therefore deny habeas relief as to the IAC Cross-Exam Claim.[5]

Turning to the IAC Investigation Claim, Petitioner alleges that trial counsel failed to adequately investigate the case by (1) not locating and subpoenaing Easy Shop shooting witness Francisco Chichel ("Chicel") (ECF No. 1-1 at 91); (2) failing to obtain Chastity Connor's phone records (*id*. at 92-94); and (3) failing to interview "every police officer who was assigned to [Petitioner's] arrest from the varying municipalities." (*Id*. at 94) These three arguments collectively comprise Petitioner's IAC Investigation Claim.

Petitioner raised the IAC Investigation Claim in his PCR petition. (ECF No. 7-11 at 55, 60.) Judge Roma ruled that Petitioner failed to demonstrate the *Strickland* prejudice prong. (*Id*. at 61.) Specifically, the Judge determined that (1) "from the information deduced at the trial, it is clear that trial counsel's alleged errors [as to Chicel][6] would not have changed the outcome of the case" (*id*. at 60-61); (2) there was no evidence that Petitioner made a call to Ms. Connor and, in

---

[5] In addition, Petitioner's sixteen-year sentence on the Teterboro incident runs concurrently with the other counts against him. *Brown*, 2014 WL 8808913, at *3. Even without considering Teterboro, Petitioner is still sentenced as to the Hackensack, Lodi, and Englewood crimes. Petitioner has not adequately explained how he can meet *Strickland*'s prejudice requirement in light of this fact. *See Parkin v. United States*, 565 F. App'x 149, 152 (3d Cir. 2014) (discussing concurrent sentence doctrine); *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002) (*Strickland* requires satisfaction of both the defective performance and prejudice prongs for an IAC claim).

[6] Judge Roma noted that trial counsel had, in fact, subpoenaed Chicel, although the subpoena was sent out late. (ECF No. 7-11 at 60 "[Counsel] was unable to locate the witness after multiple attempts, including the use of detective agencies").)

any event, "proof of [a] phone call made does not prove the contents of the phone call" (*id*.); and (3) Petitioner's contention about other police officer witnesses was "mere[] speculati[on] [as to what] additional interviews would have produced to assist [P]etitioner." (*Id*.) The Appellate Division, "[a]fter carefully considering the record and the briefs," found the IAC Investigation Claim to be "without sufficient merit to warrant discussion in a written opinion." The Court affirmed Judge Roma's PCR decision. *Brown*, 2014 WL 8808913, at *5.

The Appellate Division's affirmance of Judge Roma's rejection of the IAC Investigation Claim was not objectively unreasonable. As to Chicel, Petitioner alleges that Chicel would have given the jury "an alternative description of the [Garfield robbery] shooter." (ECF No. 1-1 at 91.) However, evidence at trial showed that Chicel "was not an eyewitness to the [Garfield robbery] crime itself, was intoxicated at the time he first spoke with police, and failed to recall any part of what he first reported to police during a second interview." (ECF No. 7-11 at 60.) The record suggests that Chicel would have suffered from a lack of reliability as a witness, given his intoxication and gaps in recollection. Thus, Judge Roma's conclusion about the absence of prejudice does not amount to an unreasonable application of the *Strickland* standard. Petitioner has not demonstrated that Chicel would have given specific testimony that more likely than not would have altered the outcome of the case. *See Strickland*, 466 U.S. at 693.

As to Connor, Petitioner alleges that Connor's phone records would have corroborated his claim that he called her after Captain Lomia threatened to phone the New Jersey Division of Youth and Family Services ("DYFS"). Petitioner argues that Lomia threatened a DYFS call about Connor and Petitioner's baby if he did not speak with police. (ECF No. 1-1 at 92-94.) However, Petitioner offers no basis for this Court to abandon its requisite deference to Judge Roma's finding that Petitioner had not shown *Strickland* prejudice. He provides no evidence, and the Court finds none

in the record after careful review, that Petitioner in fact called Connor and spoke to her about Lomia's alleged DYFS threat. Moreover, as Judge Roma observed, the phone records would not reveal the substance of any call with Connor.

As to interviewing police officers, Judge Roma's rejection of the argument constituted a reasonable application of the *Strickland* prejudice prong. Petitioner claims that "there would have been a basis to contradict the testimony of the lead witness, Detective Coffey … [i]f counsel would have spoken with the ten officers." (ECF No. 1-1 at 94.) However, Petitioner has not put forth facts or arguments showing how the aforementioned officers' testimony would have changed trial's outcome. *See Palmer v. Hendricks*, 592 F.3d 386, 393 (3d Cir. 2010) ("[A] court should be reluctant to convene an evidentiary hearing to explore the claims of a petitioner whose pleadings are factually insufficient to suggest any entitlement to habeas relief"). *See also* ECF No. 7-11 at 60-61 ("Petitioner provides no evidence that any of the officers would provide any information demonstrating a reasonable probability that the outcome of the case would have been different").) Petitioner has demonstrated neither what the officers specifically would have testified nor a reasonable probability that such testimony would have changed trial's outcome. There is, therefore, no basis whatsoever for this Court to conclude that but for counsel's alleged errors as to the ten officers, the case's result would have differed. *See Strickland*, 466 U.S. at 694.

Next, as to the IAC Suppression Motion Claim, Petitioner argues that counsel erred on the suppression motion by (a) not attacking the State's failure to obtain a search warrant before entering Connor's home (ECF No. 1-1 at 94-96); (b) failing to argue that the police did not "scrupulously honor [his] right to remain silent" (*id*. at 96-100); (c) failing to develop the argument that the police lacked probable cause to arrest (*id*. at 100-08); (d) not attacking the police's failure to announce their intent to arrest him before he fled  (*id*. at 108-09); and (e) not pursuing the

police's alleged threat to contact the DYFS about removing Petitioner's child from Connor's custody (*id*. at 109-10).

Petitioner raised the IAC Suppression Motion Claim's in his PCR petition. (ECF No. 7-11 at 62.) Judge Roma rejected all five arguments, ruling that Petitioner had not demonstrated *Strickland* prejudice. (*Id*. at 62-63.) The Judge determined that counsel was not deficient under *Strickland* as to the arguments concerning the search warrant, probable cause, or intent to arrest. (*Id*.) Judge Roma determined that Petitioner had not demonstrated *Strickland* prejudice as to the silence and DYFS assertions. (*Id*.) The Appellate Division, "[a]fter carefully considering the record and the briefs," found the IAC Suppression Motion Claim to be "without sufficient merit to warrant discussion in a written opinion." The Court affirmed Judge Roma's PCR decision. *Brown*, 2014 WL 8808913, at *5 ("We conclude defendant failed to meet both prongs of the *Strickland* test").

Under the deferential standard that applies to state courts' *Strickland* determinations, the Court find that the Appellate Division's affirmance of Judge Roma's ruling was sound. The record supports the objective reasonableness of Judge Roma's rulings. Since Petitioner was inside a third-party home when police appeared, fled when police arrived, and was arrested on an adjoining building's roof, "the lack of a search warrant and any lack of probable cause to arrest the [P]etitioner at Connor's residence are irrelevant to this case." (ECF No. 7-11 at 62.) As the New Jersey Supreme Court determined, police *had* probable cause to arrest Petitioner in those circumstances. *Brown*, 14 A.3d at 34. Therefore, counsel cannot reasonably be faulted for not challenging the police's failure to announce their intent to arrest. Such an announcement stood little, if any, chance of success – Petitioner was in the process of fleeing. Furthermore, Petitioner fled the scene to an adjoining roof and had a twenty-minute police standoff. Counsel again cannot

not be faulted for not challenging failure to announce arrest. (*See id.* at 62-63 (citing *State v. Branch*, 693 A.2d 1272 (N.J. Super. Ct. App. Div. 1997) for the principle that "police do not always need to announce their intention to arrest, especially where the circumstances of the arrest demonstrate that the defendant knew he was being arrested").) Petitioner has not sustained his habeas burden. He has not pointed to any opinion in the *Strickland* line of cases with which Judge Roma's rulings were contrary or an unreasonable application regarding the search warrant, probable cause, or intent to arrest arguments.

The record also supports the objective reasonableness of Judge Roma's rulings as to Petitioner's silence and DYFS contentions. As to the silence argument, it was "mere speculation on [P]etitioner's part" that the officer accompanying Detective Coffey would have corroborated Petitioner's claim that police did not honor his right to remain silent. (*See id.* at 63 ("Therefore, the [P]etitioner failed to show that counsel's failure to pursue … alleged[] assert[ion] [of] *Miranda* rights would have changed the outcome").) Further on this point, the Court refers to its discussion above regarding the weight, content, and credibility of law enforcement's testimony in the state record versus that of Petitioner as to his interrogation and *Miranda* rights. In light of that testimonial evidence before the state court, Judge Roma's assessment about the speculative nature of Petitioner's silence argument was not based on an unreasonable determination of the facts. In fact, Judge Roma pointed out that "it would have harmed [P]etitioner's case had the detective supported Detective Coffey's testimony." (*Id.*) Thus, Petitioner has not carried his *Strickland* prejudice burden. He has not shown that "counsel's failure to pursue [P]etitioner's alleged[] assert[ion] [of] his *Miranda* rights would [have] change[d] the outcome." (*Id.*)

The DYFS argument is similarly based merely on Petitioner's speculative contention about what uncertain police testimony would or would not have shown. He has not demonstrated, much

less even argued, that police testimony about Lomia's supposed DYFS threat would have not only discredited Lomia's version of events but also, more likely than not, altered trial's outcome. The trial court found that Petitioner's suppression testimony, at best. strained credulity. And the trial court's determination is fully supported by the record.

For all of these reasons, the state courts' rulings rejecting the IAC Suppression Motion Claim are neither contrary to nor an unreasonable application of *Strickland* and its progeny. Nor have those rulings resulted in decisions based on unreasonable determinations of the facts in light of the evidence presented in state court proceedings. The Court will therefore deny habeas relief as to the IAC Suppression Motion Claim.

As to the IAC Plea Claim, Petitioner argues that trial counsel ineffectively handled plea negotiations. He claims counsel never explained that the State's plea offers did not include an extended term. (ECF No. 1-1 at 111-15.) The State initially offered a term of approximately twenty years, subject to the No Early Release Act, N.J. Stat. Ann. § 2C:43-7.2 ("NERA"), but later offered a thirteen or fourteen-year term, also subject to NERA. Petitioner rejected all offers. *Brown*, 2014 WL 8808913, at *4.

Petitioner asserted the IAC Plea Claim in his PCR petition. (ECF No. 7-11 at 55.) He argued that he "received a more severe sentence at trial than he likely would have received by pleading guilty." (*Id*. at 57.) Counsel told the PCR court that Petitioner understood the sentencing exposure if he entered a guilty plea. Specifically, counsel testified as follows:

> Judge Conte asked [the prosecutor] on the record whether or not Mr. Brown's exposure included the possibility of a discretionary extended term … [The prosecutor] indicated to Judge Conte that Mr. Brown was discretionary extended term … Judge Conte asked Mr. Brown if he understood what offer was out there. Mr. Brown said he did. Judge Conte asked Mr. Brown if he was going to accept that offer and Mr. Brown said he would not … [Petitioner] understood that he wouldn't get more time than the recommendation of the

State. I don't know if it was even couched in terms of an extended term. The time was fixed ... but whatever the [term of years was], it wasn't going to be any higher than that number. There was no circumstance under which the judge could exceed that number ... [W]e had *very, very specific discussions about the amount of time* that he was facing and the amount of time that was being offered in the plea bargains … [M]y discussion, at least, would be this is the number that you would be facing … [Extended term] might have come up when the issue was raised in court, either before Judge Roma or Judge Conte, and when you put on the record what his prior criminal history was, and you indicated that it was a discretionary extended term, I might have explained that to him in the jail … [T]he trial [in this case] was over six years ago. [My] testimony [is] to the best of my recollection.

(ECF No. 1-55 at 4, 5-6, 8, 10-11, 13) (emphasis added). Counsel also emphasized that Petitioner did not want to plead to any of the offers made by the State. (*Id*. at 13.) Judge Roma found counsel's testimony "highly credible," determined that "[P]etitioner was properly informed of all plea offer," and ruled that Petitioner had therefore not demonstrated *Strickland* defective performance. (ECF No. 7-11 at 57-58.) Given that counsel informed Petitioner of the State's plea offer, Judge Roma also found *Lafler v. Cooper*, 566 U.S. 156 (2012) inapplicable. *See id*. at 57 (citing *Lafler* for the principle that "trial counsel must advise the defendant of plea offers from the State under the Sixth Amendment").

During appeal of PCR denial, the Appellate Division affirmed Judge Roma's decision. *Brown*, 2014 WL 8808913, at \*5. The Court found that Judge Roma's "findings are supported by the testimony of a witness [the court] had the opportunity to see and hear." *Id*. The PCR appellate court expressly rejected Petitioner's contention that he was unaware that the court would not impose an extended term if he entered a guilty plea. *Id*.

The state courts' denial of Petitioner's IAC Plea Claim was objectively reasonable. Petitioner has not shown *Strickland* deficient performance – *i.e.*, that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *See Jacobs*, 395 F.3d at

102. The state court reasonably found credible trial counsel's testimony that he *did* advise Petitioner during plea negotiations about his extended term eligibility. The record supports that finding. The PCR hearing transcript indicates that trial counsel *did* inform Petitioner of the State's offers. Counsel testified before the PCR court:

> I remember very clearly having the discussion with Mr. Brown about what a 13 or 14 years term would mean. And considering it was NERA, I remember speaking to Mr. Brown and saying that if he received 14 years, he'd be eligible for parole, I guess, in around say, 12 years … And I told [him] that based on the jail credit and his parole eligibility that he would be getting out of jail, under that term, if he was paroled, in about ten or 11 years. [He] rejected that plea offer. [His] attitude was that a ten or 11–year sentence to him … was the same as a longer sentence or a life sentence. And he rejected the plea offer ... There wasn't a single plea that I ever had the impression that he was considering.

(ECF No. 1-55 at 6, 13). *See* also ECF No. 7-11 at 57-58 ("[Defense counsel] stated that he advised the [P]etitioner of all plea offers and discussed them with the petitioner. [He] additionally … explained the final plea offer to the [P]etitioner and went to trial only at [Petitioner's] insistence. Mr. Kittner is an experienced trial lawyer, who has handled many cases before this Court"). The Appellate Division correctly deferred to Judge Roma's "findings which are substantially influenced by his opportunity to hear and see the witness[]." *Brown*, 2014 WL 8808913, at *5.

This Court has no basis to abandon its deference to such findings, particularly where the record corroborates -- independent of counsel's testimony -- those findings about Petitioner's knowledge of the plea offers. Such independent validation includes (1) the State's notification to the Court and Petitioner of its plea offer on the record at the September 29, 2005 status conference (*see* ECF No. 7-11 at 58); (2) the State's communication on the record at the December 5, 2005 pre-trial conference that the final plea offer was eighteen years' incarceration (*id.*); (3) the Court's confirmation at the pre-trial hearing that the Petitioner understood NERA's applicability and his

discretionary extended term exposure (*id.*); and (4) Petitioner's acknowledgment in a January 5, 2006 letter to Judge Conte that Petitioner "must soon decide whether or not to accept the State[']s offer 18 or 16 years imprisonment with a NERA trial." (*Id.*)

In the face of such independent corroboration of the plea communications to Petitioner, his reliance on *Lafler v. Cooper*, 566 U.S. 156 (2012) does not alter this Court's decision. (*See* ECF No. 1-1 at 112.) In *Lafler*, the State conceded that counsel's advice -- that the prosecution would be unable to establish intent to murder because the victim had been shot below the waist -- was constitutionally deficient performance. That is not the case here. Petitioner's contention that counsel "prevented [him] from making an informed decision about plea bargaining" (ECF No. 1-1 at 111) flies in the face of record evidence showing the contrary. Petitioner's unsupported assertions give this Court no reasonable basis to second-guess Judge Roma's determination that he was "properly informed of all plea offers" (ECF No. 7-11 at 57), rendering Petitioner's *Lafler* argument irrelevant.

For these reasons, the Appellate Division's affirmance of Judge Roma's ruling was not an unreasonable determination of the facts in light of the evidence presented in state court. Indeed, it is the only logical conclusion from the record. Given that "it is clear that the [P]etitioner was aware of the plea offers and contemplated them" (ECF No. 7-11 at 58), Petitioner has not shown that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *See Strickland*, 466 U.S. at 687. The state courts did not unreasonably apply the governing federal standard in deciding that Petitioner did not demonstrate *Strickland* deficient performance. The Court will therefore deny habeas relief as to the IAC Plea Claim.

### D. Ground Four: IAC By Both Appellate Counsel

Mark Tabakman was Petitioner's appellate counsel on direct appeal before the Appellate

Division. *See Brown*, 2009 WL 2408568, at *3. Petitioner contends that Mr. Tabakman rendered deficient performance by (1) not challenging the trial court's ruling concerning Novak's testimony (ECF No. 1-1 at 116-18); (2) not challenging jury selection via voir dire transcripts and arguments about the jury's racial composition (*id*. at 120); and (3) not challenging the denial of Petitioner's motion to sever counts of the indictment. (*Id*. at 120-23 (collectively, "Tabakman IAC Claim").)

Jacqueline Turner was Petitioner's appellate counsel on direct appeal before the New Jersey Supreme Court. (*See* ECF No. 1-1 at 21.) Petitioner claims that she rendered deficient performance by (1) allowing the State to supplement the record to show probable cause for Petitioner's arrest (ECF No. 1-1 at 119); and (2) conceding that the police had probable cause to arrest Petitioner. (*Id*. at 120.) (ECF No. 1-1 at 119-20 (collectively, "Turner IAC Claim").)

Petitioner raised the Tabakman IAC Claim in his PCR petition. (ECF No. 7-17 at 70-81; ECF No. 7-11 at 55, 63-64.) Judge Roma correctly acknowledged that the *Strickland* test "is used to assess the performance of appellate counsel" (*see* ECF No. 7-11 at 64 (citing *State v. Morrison*, 522 A.2d 473 (N.J. Super. Ct. App. Div. 1987)) and that "appellate counsel is not required to assert every possible argument on appeal." (*Id*. (relying on *Jones v. Barnes*, 463 U.S. 745, 754 (1983)). Rejecting the Tabakman IAC Claim, the PCR court determined that Petitioner had not shown *Strickland* deficient performance. (ECF No. 7-11 at 63-64 ("Appellate counsel is not required to raise every non-frivolous issue that a defendant requests on appeal") (citing *State v. Gaither*, 935 A.2d 782 (N.J. Super. Ct. App. Div. 2007).) The Appellate Division affirmed Judge Roma, finding that Petitioner had also not shown *Strickland* prejudice. The Court summarily concluded that Petitioner's IAC arguments were "without sufficient merit to warrant written discussion." *Brown*, 2014 WL 8808913, at *5.

Ineffective assistance of appellate counsel is analyzed under the *Strickland* standard. *See Albrecht v. Horn*, 485 F.3d 103, 137 (3d Cir. 2007) (quoting *United States v. Mannino*, 212 F.3d 835, 840 n.4 (3d Cir. 2000)). Under that test, this Court finds that the IAC claims against Mr. Tabakman are without merit.

Under the deficient-performance prong of *Strickland*, this Court presumes that Mr. Tabakman's choices were made in furtherance of a legal strategy. Mr. Tabakman made over one dozen points on appeal, including a challenge to the denial of the motion for a mistrial. (*See* ECF No. 7-11 at 64; ECF No. 7-4 at 1-3; ECF No. 7-2 at 1-3; ECF No. 7-1 at 1-3.) Mr. Tabakman's ninety-seven-page appellate brief (ECF No. 7-1 at 1-107) strongly suggests appellate counsel's competent comprehension of his client's case and pertinent law. Of particular significance, he could not challenge on appeal any issue not preserved in the record below, such as a challenge to the jury's racial composition. Petitioner's criticism of appellate counsel's election not to raise the ruling concerning Novak and the defense's opening the door fails as the Court has rejected the same argument as to trial counsel's performance.

At any rate, Petitioner has not shown *Strickland* prejudice -- *i.e.*, that it is reasonably probable that the outcome of the case would have been different if Mr. Tabakman had, for example, challenged the trial court's ruling on Novak's testimony. Given that Petitioner's sixteen-year sentence on the Teterboro incident runs concurrently with the other counts against him, *Brown*, 2014 WL 8808913, at *3, he faces the same sentence as to the Hackensack, Lodi, and Englewood crimes -- aside from the Teterboro crime. *See Parkin v. United States*, 565 F. App'x 149, 152 (3d Cir. 2014) (discussing concurrent sentence doctrine). And as to the other offense, Petitioner confessed.

Petitioner has also not shown it reasonably probable that the case's outcome would have differed if Mr. Tabakman had challenged denial the severance motion. As Judge Conte noted at the March 28, 2006 motion hearing, New Jersey Rule of Court 3:7-6 allows two or more offenses to be charged in the same indictment "if the offenses charged are of the same or similar character or are based on the same actual transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." (ECF No. 1-29 at 12-13.)  New Jersey Rule of Court 3:15-2 "vests a trial court with discretion to order separate trials, if joinder would prejudice unfairly a defendant." (*Id*. at 13.)  This "decision whether to sever an indictment rests in the sound discretion of the trial court," who is to "balance the potential prejudice to defendant's due process rights against the State's interest in judicial efficiency." (*Id*. at 14 (internal citations omitted).)  In performing that balancing, Judge Conte found "insufficient reason to sever these trials" because the crimes "were common acts and … the evidence goes directly to all the parties involved in one plan and scheme[.] [S]o therefore, there should be no severance." (*Id*. at 15.) Absent an abuse of discretion, appellate courts defer to trial courts' severance decisions. *Id*. at 14 (internal citations omitted)).   The Court can find no error in the trial court's decision.

In light of the foregoing considerations, this Court is unable to find fault with the state courts' rejections of the Tabakman IAC Claim. Those rulings were neither contrary to nor an unreasonable application of *Strickland* and its progeny. Nor have those rulings resulted in decisions based on unreasonable determinations of the facts in light of the evidence presented during Petitioner's state court proceedings.

Respondents suggest that Petitioner also raised the claims as to Turner in his PCR petition. (*But see* ECF No. 7 at 34; ECF No. 7-10 at 44-46 (citing to Petitioner's PCR assertion of the Tabakman, not Turner, IAC Claim).) Respondents state that the Appellate Division summarily

rejected the Turner arguments. (ECF No. 7 at 34.) However, the Appellate Division's opinion does not refer, either generally or specifically, to the Turner claims.

The PCR trial court referred only to Tabakman in its opinion. *See Brown*, 2014 WL 8808913, at *5; ECF No. 7-11 at 63-64. This Court reasonably construes that opinion to indicate that only the Tabakman claim was presented on PCR. *See* ECF No. 7-11 at 63-64.)

To the extent that Petitioner did not fairly present the Turner issue to all three levels of the New Jersey state courts, the claim is unexhausted.[7] This Court can nevertheless deny it on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) ("Under 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here"). That is what the Court will do here.

The state courts reasonably could have determined that Petitioner failed to demonstrate both *Strickland* prongs. First, Petitioner himself expressly advised the New Jersey Supreme Court that he did not concede the police had probable cause to arrest him. *See State v. Brown*, 14 A.3d 26, 29 n. 2 (N.J. 2011) ("[D]efense counsel conceded at oral argument that the police had probable

---

[7] Under the AEDPA, this Court may not grant a writ of habeas corpus under 28 U.S.C. § 2254 unless the petitioner has exhausted the remedies available in the courts of the State or exhaustion is excused under 28 U.S.C. § 2254(b)(1)(B). *See Henderson v. Frank*, 155 F.3d 159, 164 (3d Cir. 1998); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997); *Toulson v. Beyer*, 987 F.2d 984 (3d Cir. 1993). To satisfy the exhaustion requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). The exhaustion doctrine therefore requires a petitioner challenging a New Jersey conviction under § 2254 to have fairly presented each federal ground that is raised in the petition to all three levels of the New Jersey courts -- that is, the Law Division, the Appellate Division, and the New Jersey Supreme Court. *See O'Sullivan*, 526 U.S. 838; *Rose v. Lundy*, 455 U.S. 509 (1982).

cause to arrest Brown. Brown has submitted a pro se letter stating that he does not concede that issue, which we have considered"). In light of this fact, the state courts could have determined that Petitioner failed to show *Strickland* deficient performance. Counsel did not remove Petitioner's probable cause position from judicial attention. Rather, the New Jersey Supreme Court was aware that Petitioner did not wish to concede that issue.

In any event, the record amply supports the New Jersey Supreme Court's determination that police had sufficient probable cause to arrest Petitioner. The Court based that probable cause ruling on co-defendants' statements inculpating Petitioner, on Petitioner's flight from Connor's apartment, and on his creation of a post-flight standoff situation with police. *Id*. at 34. Thus, with the cards stacked so heavily against Petitioner on the probable cause issue, this Court cannot say that Ms. Turner's concession of that issue was unconstitutionally deficient. *See Strickland*, 466 U.S. at 687 (petitioners must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment"). In the face of a robust record of probable cause for arrest, the state courts reasonably could have found that Ms. Turner's concession of the issue did not fall below an objective standard of reasonableness. *See Jacobs*, 395 F.3d at 102. *See also Strickland*, 466 U.S. at 689 (in scrutinizing counsel's performance, courts "must be highly deferential [and] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"). The New Jersey Supreme Court could have found that Ms. Turner acted reasonably in conceding a weakness in Petitioner's case, in order to strategically focus appellate efforts on stronger arguments. Pressing the weak issue of probable cause could have detracted from the strength of others in the defense's case.

Second, the state courts reasonably could have determined that Petitioner failed to demonstrate *Strickland* prejudice. Petitioner has not shown that Ms. Turner's probable cause

concession prejudiced his defense such that he was "deprive[d] of a fair trial whose result is reliable." *See Strickland*, 466 U.S. at 687. There is not a reasonable probability that the case's outcome for Petitioner would have been different, but for Ms. Turner's concession. In the face of the record support for probable cause to arrest, the New Jersey Supreme Court reasonably could have determined that nothing *counsel* did could have prejudiced the case's outcome. To the contrary, the Supreme Court expressly found that probable cause did exist. Probable cause manifests from the facts of record -- not from Ms. Turner's concession. Nothing that *counsel* did could have changed the overwhelming probable cause circumstances that *Petitioner* created. Accordingly, the state courts' rulings were neither contrary to nor an unreasonable application of *Strickland* with respect to the Turner assertions.

The Court will therefore deny habeas relief as to the entirety of Ground Four.

### E.    Ground Five: Cruel And Unusual Punishment

Petitioner argues that his sentence amounts to cruel and unusual punishment in violation of the Eighth Amendment of the federal Constitution. (ECF No. 1-1 at 123-33 ("Eighth Amendment Claim").) On September 26, 2006, the trial judge sentenced Petitioner, in the aggregate, to life imprisonment, with ninety-three years, eight months and 106 days of parole ineligibility. *Brown*, 2014 WL 8808913, at *1. On direct appeal, the Appellate Division on August 7, 2009 reversed the convictions related to the unlawful possession of a rifle; the Court affirmed all other convictions. *Id*. The Appellate Division also vacated the sentence imposed on two second-degree robbery convictions because the length of these sentences was greater than that permitted under New Jersey Stat. Ann. § 2C:43-6(a)(2); and the sentencing judge failed to make sufficient findings in support of aggravating and mitigating factors. (*Id*.) The New Jersey Supreme Court affirmed and modified the judgment, remanding the matter for resentencing. *Brown*, 2014 WL

8808913, at *1; *Brown*, 14 A.3d at 35. On September 9, 2011, the trial court re-sentenced Petitioner to the same aggregate term. *Id.*; ECF No. 1-25. He was convicted of twenty-seven counts, facing seventeen sentences for the crimes. (ECF No. 1-25 at 4.)

Petitioner raised the Eighth Amendment Claim in his PCR petition. (ECF No. 7-11 at 55.) Judge Roma rejected the argument, explaining that: (1) Petitioner's sentence was permissible under New Jersey Stat. Ann. § 2C:44-3(a); (2) the re-sentencing court "carefully weighed the aggravating and mitigating factors" (*id.* at 64-65); (3) "the eight aggravating factors substantially outweighed the sole mitigating factor" (*id.* at 65); and (4) consecutive sentence were appropriate pursuant to factors in *State v. Yarborough*, 498 A.2d 1239 (1985). (ECF No. 7-11 at 65.) Affirming Judge Roma, the Appellate Division was "not persuaded" by the Eighth Amendment Claim, finding it without sufficient merit to warrant discussion. *Brown*, 2014 WL 8808913, at *1, *5.

This Court finds that Petitioner is not entitled to relief on the Eighth Amendment Claim. A federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies." *See Grecco v. O'Lone*, 661, F. Supp. 408, 415 (D.N.J. 1987) (citation omitted). Thus, a challenge to state court discretion at sentencing is not reviewable in a federal habeas proceeding unless the sentence violates a separate federal constitutional limitation. *Butrim v. D'Ilio*, No. 14-4628, 2018 WL 1522706, at *16 (D.N.J. Mar. 28, 2018) (citing *Pringle v. Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir. 1984)). *See also* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). A sentence that is *within* the limits imposed by statute "is neither excessive nor cruel and unusual under the Eighth Amendment." *United States v. Miknevich*, 638 F.3d 178, 186 (3d Cir. 2011). That is the case here. Petitioner was sentenced within statutorily prescribed limits.

Under New Jersey law, the ordinary term of imprisonment for first-degree robbery -- one of Petitioner's twenty-seven convictions -- is between ten and twenty years. N.J. Stat. Ann. §§ 2C:15-1(b) and 2C:43-6(a)(1). New Jersey law also mandates that robbery is subject to NERA, under which a defendant must serve eighty-five percent of his sentence before being eligible for parole. *See* N.J. Stat. Ann. §§ 2C:43-7.2(a), (d)(9). New Jersey Stat. Ann § 2C:44-3(a) provides, in pertinent part as follows:

> The court may, upon application of the prosecuting attorney, sentence a person who has been convicted of a crime of the first, second or third degree to an extended term of imprisonment if it finds one or more of the grounds specified in subsection a., b., c., or f. of this section. [...] a. The defendant has been convicted of a crime of the first, second or third degree and is a persistent offender.

N.J. Stat. Ann. § 2C:44-3. If a defendant is found to be subject to an extended term on a first-degree crime, the New Jersey sentencing guidelines provide that the defendant may face up to life in prison. N.J. Stat. Ann. § 2C:43-7(a)(2).

In this case, the state court granted the State's motion for an extended term under New Jersey Stat. Ann § 2C:44-3(a) based on Petitioner's persistent offender status. *Brown*, 2009 WL 2408568, at *19. On this basis, Petitioner faced a maximum sentence of life in prison. Thus, even Petitioner's sentence as to first degree robbery alone was within the appropriate statutory limits. In other words, having been convicted of the first-degree offense of armed robbery and thus being subject to an extended term, Petitioner faced extended term imprisonment between twenty years and life, New Jersey Stat. Ann. § 2C:43–7(a)(2); and a presumptive term of fifty years. N.J.S.A. § 2C:44–1(f)(1).[8] He also faced a parole ineligibility term between one-third and one-half of the

---

[8] "Unless the preponderance of mitigating factors set forth in subsection b. weighs in favor of a lower term within the limits authorized, sentences imposed pursuant to paragraph (1) of subsection a. of N.J.S. 2C:43-7 shall have a presumptive term of life imprisonment. Unless the preponderance of aggravating and mitigating factors set forth in subsections a. and b. weighs in

base term.  N.J.S.A. § 2C:43–7c.  But under NERA, New Jersey Stat. Ann. § 2C:43–7.2, these

terms carry parole ineligibility of 85% of the base extended term. *Id.* In other words, Petitioner's

sentence was consistent with New Jersey state law.

Furthermore, courts have consistently rejected the argument that extended term sentencing

violates Eighth Amendment rights.  The United States Supreme Court has previously held that

"the Eighth Amendment contains a 'narrow proportionality principle,' that 'does not require strict

proportionality between crime and sentence' but rather 'forbids only extreme sentences that are

'grossly disproportionate' to the crime.'" *Graham v. Florida,* 560 U.S. 48, 59-60 (2010) (quoting

*Harmelin v. Michigan*, 501 U.S. 957, 997, 1000-01 (1991)).[9]  In *Lockyer v. Andrade,* 538 U.S. 63

(2003)*,* the Supreme Court held that, "[t]he gross proportionality principle reserves a constitutional

violation only for the extraordinary case." *Lockyer*, 538 U.S. at 77. "A court must consider three

proportionality factors when evaluating Eighth Amendment challenges: (1) the [offense's] gravity

and the [penalty's] harshness; (2) the sentences imposed on other criminals in the same

jurisdiction; and (3) the sentences imposed for commission of the same crime in other

jurisdictions." *United States v. Burnett*, 773 F.3d 122, 136 (3d Cir. 2014) (citing *Solem v. Helm*,

463 U.S. 277, 290-92 (1983)). "In conducting this analysis, a court grants substantial deference to

legislative decisions regarding punishments for crimes." *Id.*

Here, the sentencing judge relied on *State v. Yarbough*, 498 A.2d 1239 (N.J. 1985), *cert.*

---

favor of a higher or lower term within the limits authorized, sentences imposed pursuant to
paragraph (2) of subsection a. of N.J.S. 2C:43-7 shall have a presumptive term of 50 years'
imprisonment[.]" New Jersey Stat. Ann. § 2C:44–1(f)(1).

[9] For example, the United States Supreme Court has upheld sentences of life in prison for a
defendant's third nonviolent felony pursuant to Texas' recidivist statute, *Rummel v. Estelle,* 445
U.S. 263 (1980); twenty-five years to life in prison for theft of golf clubs under California's
Three Strikes sentencing scheme, *Ewing v. California,* 538 U.S. 11 (2003); and two consecutive
terms of twenty-five years to life in prison for two convictions for petty theft, also pursuant to
California's Three Strikes law. *Lockyer v. Andrade,* 538 U.S. 63 (2003).

*denied*, 475 U.S. 1014 (1986), which sets out factors for determining whether sentences should be consecutive or concurrent. (ECF No. 1-25 at 3-4.) This Court cannot review whether the state court applied the *Yarbough* factors correctly, *see Estelle*, 502 U.S. at 67–68, but for Eighth Amendment purposes the Court notes that the *Yarbough* factors are an amalgamation of other jurisdictions' criteria for imposing consecutive or concurrent sentences. *Yarbough*, 498 A.2d at 1245–48. Judge Roma found that "*Yarbough* factors #1 and #3 apply."[10] (ECF No. 1-25 at 4.) Applying the constitutional proportionality principle's first factor, this Court finds nothing in the record to disturb the state court's evaluation of offense gravity and penalty harshness.

Further, Petitioner's sentence is consistent with sentences received by others convicted of the same crime. *See State v. Dudley*, 2007 WL 209918, at *10 (N.J. Super. Ct. App. Div. Jan. 29, 2007) (upholding defendant's extended term sentence of fifty years for first-degree robbery with twenty-two years of parole disqualification); *State v. Washington*, 2008 WL 1733661, at *8 (N.J. Super. Ct. App. Div. Apr. 16, 2008) (affirming extended term sentence of fifty years on armed robbery conviction, since the sentence was not manifestly excessive or unduly punitive).

For all of these reasons, this Court concludes that the state court ruling on Petitioner's sentencing was not contrary to, or an unreasonable application of, clearly established Eighth Amendment federal jurisprudence. The state sentence was not unconstitutional, in light of the facts on the record below. Petitioner is not entitled to relief on his Eighth Amendment Claim.

### F. Ground Six: Refusal To Allow Petitioner's Use Of Earphones For Sidebar Conferences

Petitioner argues that the trial court violated his Sixth Amendment and due process rights

---

[10] *See Yarbough*, 498 A.2d at 1247–48 ("the crimes and their objectives were predominantly independent of each other"; and "the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior").

by not permitting him to listen to sidebars with in-court headphones. (ECF No. 1-1 at 133-34) At trial, Petitioner participated in jury selection sidebar conferences by remaining seated at counsel's table and listening to the discussions through an earpiece. *Brown*, 2009 WL 2408568, at *19; ECF No. 1-1 at 134. After jury selection, when the State began presenting evidence, he asked to participate in sidebars by wearing that same earpiece. He argued that the same rationale that grants a defendant a sidebar participation right during jury voir dire should apply during trial. *Id*. The trial court disagreed. The judge stated that sidebar conferences during trial are "totally different" from those during voir dire. The latter involve legal arguments, while the former implicate observations that form jury challenges' basis. The trial court thus found no authority to support Petitioner's request. (*Id.*; ECF No. 1-34 at 29-30.)

Petitioner raised the sidebar claim on direct appeal. *Brown*, 2009 WL 2408568, at *11. The Appellate Division concluded that the trial court's sidebar ruling did not amount to a basis to reverse Petitioner's convictions or conclude that trial produced an unjust result. *Id*. at *19. Petitioner next asserted the claim in his PCR application. (ECF No. 7-11 at 64.) Judge Roma rejected the claim as procedurally barred under New Jersey Rule of Court 3:22-5,[11] since "the issues were addressed and the challenge was dismissed by the Appellate Division." (*Id*.) On appeal of PCR denial, the Appellate Division found the sidebar claim to be without sufficient merit to warrant written discussion. *Brown*, 2014 WL 8808913, at *5.

This Court finds that the sidebar claim is without merit for the following reasons. The Sixth Amendment allows a defendant to make significant tactical decisions regarding his own case

---

[11] "A prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to this rule or prior to the adoption thereof, or in any appeal taken from such proceedings." New Jersey Rule of Court 3:22-5.

instead of being subjected against his will to counsel's strategy. *Faretta v. California,* 422 U.S. 806 (1975); *McKaskle v. Wiggins,* 465 U.S. 168, 178 (1984). A defendant must have the opportunity to "control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial." *Id.* at 174.

"[U]nder [New Jersey] Rule [of Court] 3:16, a defendant, who requests it, ordinarily has a right of presence at voir dire sidebar conferences." *State v. W.A.*, 875 A.2d 882, 884 (2005). However, "presence at sidebar need not always mean physical presence." *Id.* at 891. Where there are security issues that militate against a defendant's physical presence at a voir dire sidebar, a court may utilize other methods to ensure a defendant is able to meaningfully participate in voir dire. *Id.* at 892. These methods may include the use of electronic equipment, such as wireless listening devices. *Id.* at 883. A defendant's exclusion from sidebar, after having requested presence, and in the absence of a substituted process, does not automatically warrant reversal. *Id.* at 894. Rather, each case must be assessed under a harmless error analysis. *Id.*

The United States Supreme Court has not addressed whether a defendant's exclusion from sidebar conferences implicates the defendant's constitutional rights. *See United States v. Schwartz*, 315 F. App'x 412, 416 n.1 (3d Cir. 2009); *Davenport v. Ricci*, No. 09-4997, 2012 WL 2863662, at *13 (D.N.J. July 11, 2012). Instead, relevant Supreme Court precedent makes clear that voir dire "is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion." *Connors v. United States*, 158 U.S. 408, 413 (1895); *accord Robinson v. Johnson*, No. 15-8097, 2018 WL 2859672, at *14 (D.N.J. June 11, 2018). Furthermore, "[e]xclusion from a single sidebar conference conducted outside the jury's presence does not automatically deny one the right to self-representation; rather, it must be viewed in the context of

the trial as a whole." *United States v. Ottaviano*, 738 F.3d 586, 598 (3d Cir. 2013) (internal citations omitted). No United States Supreme Court decision has held that a trial court must permit a criminal defendant to listen to trial sidebar conferences.

The record here suggests that other than the sidebar conferences he now challenges, Petitioner was present for the entire trial. He was present in court and heard the arguments that preceded and followed sidebars, as well as the trial court's rulings on them. (*See* ECF Nos. 1-34 – 1-52.) Moreover, Petitioner was represented by counsel who participated in the sidebars and could convey their content to him. (*Id.*) Given that he cannot point to any United States Supreme Court precedent giving him a Sixth Amendment right to listen via headphones to post-voir dire sidebars, Petitioner has not shown that the Appellate Division's resolution of his sidebar claim was contrary to clearly established federal law. 28 U.S.C. § 2254(d)(1).

Furthermore, Petitioner has not shown that his post-voir dire sidebar exclusion prejudiced his defense. Indeed, he does not claim that such exclusion adversely influenced the jury's verdict (*see* ECF No. 1-1 at 134); this Court has not located any evidence in the record which suggests it either. Petitioner does not complain about any particular position taken or conceded by counsel at any specific sidebar conference. He also does not contend that any particular sidebar's result would have differed if he had been allowed to participate. A writ of habeas corpus may issue only if the reviewing court finds that a constitutional error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993); *accord Szuchon v. Lehman*, 273 F.3d 299, 319 (3d Cir. 2001). "Petitioner has not shown that had counsel included Petitioner at sidebar, there is a reasonable probability the outcome of the trial would have been different." *See Robinson*, 2018 WL 2859672, at *15.

In light of the foregoing, Petitioner is not entitled to relief on his sidebar claim.

### G. Ground Seven: Cumulative Errors

Petitioner argues that the errors alleged in his § 2254 Petition "in the aggregate … rendered the trial and appellate process unfair." (ECF No. 1-1 at 135)  Petitioner raised the cumulative error claim on direct appeal. *Brown*, 2009 WL 2408568, at *11; ECF No. 7-1 at 93. The Appellate Division found it without sufficient merit to warrant written discussion. *Brown*, 2009 WL 2408568, at *12, *22.  He also raised the claim in his PCR application. (ECF No. 7-17 at 87-88.) Judge Conte found no merit to any of the PCR petition's claims. (ECF No. 7-11 at 57-65.)

Petitioner did not raise the cumulative error claim in his appeal of PCR denial to the Appellate Division or in his petition for certification to the New Jersey Supreme Court. (ECF No. 7-10 at 2-3; ECF No. 7-14 at 5; ECF No. 7-15 at 3.)  Petitioner thus failed to exhaust the Cumulative Error Claim by not fairly presenting it to all three levels of the New Jersey state courts. *See O'Sullivan*, 526 U.S. at 838, 845); *Rose*, 455 U.S. 509; *Henderson*, 155 F.3d at 164; *Lambert*, 134 F.3d at 513; *Toulson*, 987 F.2d 984. A cumulative error claim is a distinct claim that is subject to the exhaustion and procedural default doctrines. *Collins v. Sec'y of Pennsylvania Dep't of Corr.*, 742 F.3d 528, 533, 541 (3d Cir. 2014). Nevertheless, this Court may, and will, deny this unexhausted claim on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor*, 504 F.3d at 427; *Bronshtein*, 404 F.3d at 728 3d Cir. 2005).

"The cumulative error doctrine allows a petitioner to present a stand-alone claim asserting the cumulative effect of errors at trial so undermined the verdict as to constitute a denial of his constitutional right to due process." *Collins*, 742 F.3d at 542. "Individual errors that do not entitle a petitioner to relief may do so when combined, if cumulatively the prejudice resulting from them undermined the fundamental fairness of his trial and denied him his constitutional right to due process." *Id*. (quoting *Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008)).  The test for a "cumulative

error" claim is whether the overall deficiencies "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Muniz v. Powell*, No. 13-178, 2015 WL 511618, at *15 (D.N.J. Feb. 6, 2015) (citing *Hein v. Sullivan,* 601 F.3d 897, 917 (9th Cir. 2010) (relying on *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)); *see also Fahy,* 516 F.3d at 205 ("Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish 'actual prejudice'").

Both the Appellate Division on direct appeal and the PCR court adjudicated the cumulative error claim, finding no merit to it. The Court agrees. Given that there is no merit to the § 2254 Petition's claims for individual errors, Grounds One through Six cannot yield a cumulative error claim in Ground Seven. In short, there is no basis for habeas relief premised upon an alleged accumulation of errors that does not exist. *See*, *e.g.*, *Muniz v. Powell*, No. 13-178, 2015 WL 511618, at *15 (D.N.J. Feb. 6, 2015); *Stewart v. United States*, No. 12-346, 2014 WL 3573395, at *12 (D.N.J. July 21, 2014).

For these reasons, Petitioner is not entitled to relief on his cumulative error claim.

## V.     CERTIFICATE OF APPEALABILITY

A petitioner may not appeal from a final order in a habeas proceeding unless he has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because Petitioner has failed to satisfy this standard, the Court will deny him a certificate of appealability.

## VI.    CONCLUSION

The Petition is denied with prejudice since all of its claims are without merit. A certificate of appealability shall not issue. An appropriate Order accompanies this Opinion.


8/6/2019                                          s/ John Michael Vazquez
Date                                              JOHN MICHAEL VAZQUEZ
                                                  U.S. District Judge